# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2019 ND 144

| | |
|---|---|
| Willis G. Swenson, and Dayna L. Johnson, | Plaintiffs, Appellants, and Cross-Appellees |
| v. | |
| Kyle Mahlum, | Defendant, Third-Party Plaintiff, Appellee, and Cross-Appellant |
| v. | |
| Carol Hodgerson, Gerard Swenson, Lee Alan Swenson, and Mary Ann Vig, in their individual capacities and as heirs to the estate of Junietta Swenson, | Third-Party Defendants and Appellees |

No. 20180345

Appeal from the District Court of Burke County, North Central Judicial District, the Honorable Gary H. Lee, Judge.

REVERSED AND REMANDED.

Opinion of the Court by Crothers, Justice.

Taylor D. Olson (argued) and Peter H. Furuseth (on brief), Williston, ND, for plaintiffs, appellants, and cross-appellees Willis G. Swenson and Dayna L. Johnson.

Ryan G. Quarne, Minot, ND, for defendant, third-party plaintiff, appellee, and cross-appellant Kyle Mahlum.

Elizabeth L. Pendlay, Crosby, ND, for third-party defendants and appellees Carol Hodgerson, Gerard Swenson, Lee Alan Swenson and Mary Ann Vig.

**Crothers, Justice.**

[¶1]    Willis Swenson appeals and Kyle Mahlum cross-appeals from an order dismissing Willis Swenson's claims against Mahlum and Mahlum's claims against Carol Hodgerson, Gerard Swenson, Lee Alan Swenson, and Mary Ann Vig ("third-party defendants").  Willis Swenson argues the district court erred in dismissing his breach of contract claim against Mahlum.  We reverse the order and judgment and remand.

I

[¶2]    Robert and Junietta Swenson owned real property in Burke County, North Dakota described as:

> Township 163 North, Range 89 West
> Section 28: NW1/4
>
> Township 163 North, Range 88 West
> Section 19: NE1/4
> Section 29: NE1/4
> Section 31: E1/2NE1/4
> Section 32: SE1/4

Willis Swenson and the third-party defendants are the children of Robert and Junietta Swenson.  In 2004, Robert and Junietta Swenson conveyed the property to their children as joint tenants, reserving a life estate for themselves.  In 2005, Robert Swenson died and Junietta Swenson became the sole life tenant.

[¶3]    In 2008, Junietta Swenson leased the property to Willis Swenson.  Willis Swenson agreed to rental payments of $20,016 per year, due in installments of $10,008 on March 15 and October 15.

[¶4]    In December 2009, Willis Swenson leased the property to Mahlum for $31,022.50 per year, due on March 1.  The Swenson-Mahlum lease became effective in March 2010 and stated it would expire in October 2019.  The lease also stated, "In the event of Junietta W. Swensons death, payments shall be made as follows.  Semi

1

annual payments of $10,008 (ten thousand, eight and 00/100) on March 15 and October 15 to Swenson farm land trust. A single payment to Willis G Swenson of $11006.50 (Eleven thousand, six and 50/100) on March 1st of each year."

[¶5] In November 2011, Willis Swenson signed a new lease with Junietta Swenson. The lease required Willis Swenson to pay $10,008 on March 15 and October 15 of each year. The lease began in 2012 and stated it would expire in 2022. The lease permitted Willis Swenson to assign or sublet the property to any person.

[¶6] In July 2012, Lee Alan Swenson was appointed guardian and conservator for Junietta Swenson. In January 2013, Lee Alan Swenson, as guardian and conservator, leased the same property to Mahlum that Willis Swenson already was leasing to Mahlum in the December 2009 lease. The new lease required Mahlum to pay Junietta Swenson $31,122.50 each year on March 1. Junietta Swenson died on November 20, 2013. Mary Vig, as personal representative of Junietta Swenson's estate, informed Mahlum that future rental payments should be split and made to each of Junietta Swenson's children in equal amounts.

[¶7] In January 2017, Willis Swenson and his daughter, Dayna Johnson, sued Mahlum for unpaid rent. Willis Swenson alleged Mahlum was required to pay him $31,022.50 each year under the 2009 lease, and Mahlum failed to pay any rent in 2013, 2014, 2015, and 2016. Willis Swenson requested $124,090 in damages.

[¶8] Mahlum answered and filed a third-party complaint, suing the third-party defendants, in their individual capacities and as heirs to the Estate of Junietta Swenson, for unjust enrichment. He alleged in 2013 he paid $31,122.50 to Junietta Swenson under the terms of the 2013 lease. He also alleged in 2014, 2015, and 2016 he paid $31,122.50 in rent to each of Junietta Swenson's five children. He claimed that the third-party defendants have been unjustly enriched, and that the third-party defendants be ordered to pay Mahlum any amounts the court finds he owes Willis Swenson if Willis Swenson obtains a judgment against him.

[¶9] After a bench trial, the district court dismissed Willis Swenson and Dayna Johnson's claims against Mahlum with prejudice and dismissed Mahlum's claims

2

against the third-party defendants without prejudice. The court dismissed Johnson's claims, finding she had no interest in the property, no interest in the lease, she could not assert Willis Swenson's rights, and therefore she had no standing. The court found Willis Swenson's alleged damages were limited because he was required to pay Junietta Swenson $20,016 per year for rent on the property and therefore the most he would ever receive from Mahlum under the lease was $11,006.50, and the maximum amount of his recovery was $44,026 if he recovered any damages.

[¶10] The court dismissed Willis Swenson's claims to any rent for 2014 through 2016, finding Junietta Swenson's 2011 lease to Willis Swenson terminated upon her death, Willis Swenson no longer had a right to sublease the property, and therefore the lease between Willis Swenson and Mahlum also terminated upon Junietta Swenson's death in November 2013. The court also dismissed Willis Swenson's claims for payment of the 2013 rent. The court found Lee Alan Swenson advised Mahlum in 2013 that all future rental payments should be made directly to Junietta Swenson, Mahlum paid the 2013 rent to Junietta Swenson, and Mahlum is protected from any claim by N.D.C.C. § 30.1-29-23 because he acted in good faith with Lee Alan Swenson, as guardian and conservator.

II

[¶11] The third-party defendants argue the appeal should be dismissed because Mahlum's claims were dismissed without prejudice, the district court did not certify the judgment as final under N.D.R.Civ.P. 54(b), and the judgment is not final and appealable.

[¶12] The right to appeal is governed by statute, and the appeal must be dismissed if there is no statutory basis to hear the appeal. *James Vault & Precast Co. v. B&B Hot Oil Serv., Inc.*, 2018 ND 63, ¶ 8, 908 N.W.2d 108. A party may appeal from a judgment or order in a civil action under N.D.C.C. § 28-27-01. Only judgments and decrees which constitute a final judgment and orders specified by statute are appealable. *James Vault & Precast*, at ¶ 8.

3

[¶13] A dismissal without prejudice generally is not appealable. *Conrad v. Wilkinson*, 2017 ND 212, ¶ 5, 901 N.W.2d 348. "This Court has noted that, because either side may commence another action after a civil complaint is dismissed without prejudice, the order dismissing the action neither 'determines the action' nor 'prevents a judgment from which an appeal might be taken.'" *Bell v. Pro Tune Plus*, 2013 ND 147, ¶ 4, 835 N.W.2d 858 (quoting *Triple Quest, Inc. v. Cleveland Gear Co., Inc.*, 2001 ND 101, ¶ 7, 627 N.W.2d 379). "However, a dismissal without prejudice may be final and appealable if the plaintiff cannot cure the defect that led to dismissal, or if the dismissal has the practical effect of terminating the litigation in the plaintiff's chosen forum." *Conrad*, at ¶ 5 (quoting *Rodenburg v. Fargo-Moorhead Young Men's Christian Ass'n*, 2001 ND 139, ¶ 12, 632 N.W.2d 407).

[¶14] In *James Vault & Precast*, 2018 ND 63, ¶ 1, 908 N.W.2d 108, the question was whether the judgment was final for purposes of appeal when some claims were dismissed without prejudice. There, the district court granted summary judgment dismissing several of the defendants' cross-claims. Other claims remained and were scheduled for trial. To make the case appealable, the parties stipulated to dismissal of the remaining claims without prejudice, and the court entered judgment conforming to the stipulation. *Id.* at ¶¶ 4-5. On appeal we considered the extent of our jurisdiction where parties voluntarily dismissed claims without prejudice to create a final judgment for purposes of appeal. *Id.* at ¶ 11. In reviewing the approaches federal appellate courts have adopted, we said, "We adopt the bright-line approach to review appeals where remaining claims are dismissed without prejudice. Under this approach, if there is a dismissal without prejudice of remaining non-adjudicated claims to create a final disposition of all claims in a lawsuit, there is not a final judgment of the rights of the parties." *Id.* at ¶ 14.

[¶15] This case is different than *James Vault & Precast*. Here, after a bench trial, the district court dismissed Willis Swenson's claims against Mahlum with prejudice and dismissed Mahlum's claims against the third-party defendants without prejudice. Willis Swenson's claims against Mahlum were for failure to pay rent due under the

4

farm lease. Mahlum's unjust enrichment claims against the third-party defendants were dependent on the court entering judgment against Mahlum on Willis Swenson's claims. Because the court found in favor of Mahlum on Willis Swenson's claims, it dismissed Mahlum's claims without deciding the merits of his claims. None of the parties requested Mahlum's third-party claims be dismissed without prejudice to "create" or "manufacture" a final judgment for purposes of appellate jurisdiction. None of the claims were dismissed without prejudice "to create a final disposition of all claims." Because Mahlum's third-party claims were dependent on Willis Swenson's claims which were dismissed without prejudice, the court's decision has the practical effect of terminating the litigation. Therefore, the order and judgment dismissing Willis Swenson's claims with prejudice and Mahlum's claims without prejudice is appealable.

III

[¶16] Willis Swenson argues the district court erred in dismissing his breach of contract claim against Mahlum for unpaid rent for the 2013 farm year. He claims a valid and enforceable lease existed between himself and Mahlum, the lease was not terminated, and the court erred in finding Mahlum was protected from any claim under N.D.C.C. § 30.1-29-23. Willis Swenson does not argue the district court erred in denying his claims for unpaid rent for 2014, 2015, or 2016.

[¶17] In an appeal from a bench trial, the district court's findings of fact are reviewed under the clearly erroneous standard of review and its conclusions of law are fully reviewable. *W. Energy Corp. v. Stauffer*, 2019 ND 26, ¶ 5, 921 N.W.2d 431. A finding of fact is clearly erroneous if there is no evidence to support it, it is induced by an erroneous view of the law, or if after reviewing all of the evidence, this Court is convinced a mistake has been made. *Id.*

[¶18] The district court found Mahlum was protected from any claim by Willis Swenson for the 2013 rent on the property. The court explained:

5

"Prior to 2013, Kyle Mahlum dealt with Willis Swenson. He made payments to Willis Swenson as required by the various farm leases.

"In 2013, Lee Alan Swenson was appointed as guardian and conservator for Junietta Swenson. As guardian, and conservator Lee Alan Swenson advised Kyle Mahlum that all future lease payments should be made directly to Junietta Swenson only.

"On February 28, 2013, Kyle Mahlum paid $20,016 to Junietta Swenson as land rent for 2013. The check was endorsed by Junietta Swenson, and Lee Alan Swenson as guardian. A second check was issued on December 2, 2013, after Junietta Swenson's death. The check was issued to Junietta Swenson in the amount of $11,500. The check was endorsed by Junietta Swenson by Mary Ann Vig, P.R.

"The two payments total the amount due from Kyle Mahlum for rental for the land in 2013.

"It does not appear that Willis Swenson was involved in any of these discussions or decisions regarding the 2013 rental payment. It further does not appear that he did anything regarding the 2013 payment at the time. The December, 2009 lease between Willis Swenson and Kyle Mahlum required Kyle Mahlum to pay Junietta Swenson $10,008 on March 15, and again on October 15. Kyle Mahlum was also required to pay Willis Swenson $11,006.50, in March.

"As noted above, Kyle Mahlum made his first payment to Junietta Swenson on February 28. Willis Swenson made no demand for his share of that payment pursuant to the lease. He commenced no action against the guardian, or Kyle Mahlum for any portion of any payment.

"Willis Swenson was aware of this possible diversion of the 2013 payments as early as November 19, 2012, when attorney John Steinberger, attorney for Lee Alan Swenson, Guardian, and Conservator, sent him a letter advising that the guardian had entered into a new lease with Kyle Mahlum for the 2013 crop year. Yet again, Willis Swenson did nothing.

"Willis Swenson now seeks to reach back to 2013, and to be paid by Kyle Mahlum for the 2013 year lease.

. . . .

"There is no suggestion that Kyle Mahlum acted otherwise than in good faith with Lee Alan Swenson, as guardian and conservator. Kyle Mahlum is therefore, by [N.D.C.C. § 30.1-29-23], protected from any claim by Willis Swenson.

"To the extent Willis Swenson may have any claim at all to any 2013 payments, those claims are to be made against the guardian and conservator, and not Kyle Mahlum. Willis Swenson has made no claim

6

against Lee Alan Swenson as guardian or conservator for Junietta Swenson. The claim against Kyle Mahlum for any 2013 payment is therefore DISMISSED."

[¶19] "The elements for a prima facie case for breach of contract are: (1) the existence of a contract; (2) breach of the contract; and (3) damages which flow from the breach." *WFND, LLC v. Fargo Marc, LLC*, 2007 ND 67, ¶ 13, 730 N.W.2d 841. "A breach of contract is the nonperformance of a contractual duty when it is due." *Bakke v. Magi-Touch Carpet One Floor & Home, Inc.*, 2018 ND 273, ¶ 13, 920 N.W.2d 726. The party asserting a breach of contract must prove all elements. *WFND*, at ¶ 13. Whether a party has breached a contract is a finding of fact which will not be reversed on appeal unless it is clearly erroneous. *Id.*

[¶20] The general rules of contract interpretation apply to leases. *See Zundel v. Zundel*, 2017 ND 217, ¶ 12, 901 N.W.2d 731; *Abelmann v. Smartlease USA, L.L.C.*, 2014 ND 227, ¶ 13, 856 N.W.2d 747. "The language of a contract is to govern its interpretation if the language is clear and explicit and does not involve an absurdity." N.D.C.C. § 9-07-02. Words are given their plain, ordinary, and commonly understood meaning, unless they are used by the parties in a technical sense or special meaning is given by useage. N.D.C.C. § 9-07-09. If the parties' intent can be ascertained from the language alone, the interpretation of the contract to determine its legal effect is a question of law, which is fully reviewable on appeal. *Abelmann*, at ¶ 13; *see also* N.D.C.C. § 9-07-04.

[¶21] Willis Swenson sued Mahlum for failure to pay rent for the 2013 farm year. The parties do not dispute they executed the 2009 lease, which covered the 2013 farm year. The 2009 lease stated:

> "Contract for farmland lease between Willis G Swenson & Dayna L. Johnson, father and daughter and Kyle Mahlum.
> . . . .
> > "Terms of the lease are:
> >
> > $31,022.50 (thirty one thousand, twenty two and 50/100) to be paid by March 1st of each year in one annual payment. In the event of Junietta W. Swensons death, payments shall be made as follows. Semi annual

7

> payments of $10,008 (ten thousand, eight and 00/100) on March 15 and October 15 to Swenson farm land trust. A single payment to Willis G. Swenson of $11006.50 (Eleven thousand, six and 50/100) on March 1st of each year. This contract shall be in effect from March 1, 2010 to October 15, 2019."

[¶22] Mahlum did not dispute that he used the farmland in 2013 or that he did not pay rent to Willis Swenson for 2013. Mahlum testified he entered into the lease with Willis Swenson in December 2009, and he paid rent to Willis Swenson through 2012. Mahlum testified he paid rent to Junietta Swenson in 2013 because her guardian and conservator said he needed to lease directly from Junietta Swenson. In January 2013 Mahlum and the conservator signed a new lease. Although Mahlum admitted he farmed the property in 2013 and did not pay Willis Swenson rent, the district court did not find Mahlum breached the contract and did not find the contract was terminated. Rather, the court found Lee Alan Swenson, as guardian and conservator for Junietta Swenson, advised Mahlum to make lease payments directly to Junietta Swenson; Mahlum paid all rent due in 2013 directly to Junietta Swenson; and Mahlum is protected by N.D.C.C. § 30.1-29-23 from any claim by Willis Swenson.

[¶23] Section 30.1-29-23, N.D.C.C., provides protections for people dealing with conservators, stating:

> "A person who in good faith either assists a conservator or deals with the conservator for value in any transaction other than those requiring a court order as provided in section 30.1-29-08 is protected as if the conservator properly exercised the power. The fact that a person knowingly deals with a conservator does not alone require the person to inquire into the existence of a power or the propriety of its exercise, except that restrictions on powers of conservators which are endorsed on letters as provided in section 30.1-29-26 are effective as to third persons. A person is not bound to see to the proper application of estate assets paid or delivered to a conservator. The protection here expressed extends to instances in which some procedural irregularity or jurisdictional defect occurred in proceedings leading to the issuance of letters. The protection here expressed is not by substitution for that provided by comparable provisions of the laws relating to commercial transactions and laws simplifying transfers of securities by fiduciaries."

8

[¶24]   The plain language of N.D.C.C. § 30.1-29-23 states a person who in good faith assists or deals with a conservator for value in any transaction is protected as if the conservator properly exercised his power.  *Cf. Stuber*, 2017 ND 198, ¶ 16, 900 N.W.2d 230 (interpreting a similar statute providing protections for people dealing with personal representatives).  The statute allows a person dealing with a conservator to rely on the conservator being properly appointed and having authority to act on the protected person's behalf, subject to any restrictions to the conservator's powers endorsed on the conservator's letters of appointment.  The issue in this case is whether Mahlum breached the lease he had with Willis Swenson.  This was not a transaction dealing with a conservator.  The statute does not provide Mahlum with protection against Willis Swenson's breach of contract claims.

[¶25]   Our application of N.D.C.C. § 30.1-29-23 is consistent with other resources we have reviewed.  Section 30.1-29-23, N.D.C.C., is part of the Uniform Probate Code.  When a uniform statute is interpreted it must be construed to effectuate its general purpose to make the law uniform in those states which enacted it.  *Stuber v. Engel*, 2017 ND 198, ¶ 15, 900 N.W.2d 230.  Section 30.1-29-23, N.D.C.C., is based on the Uniform Probate Code § 5-423 (1969).  The revised Uniform Probate Code § 5-424 (2010) is based on Uniform Probate Code § 5-423 (1969), and contains language similar to N.D.C.C. § 30.1-29-23.  *See* Unif. Probate Code § 5-424, Official Comment (2010) (stating the section is based on U.P.C. § 5-422 (1982)); Unif. Probate Code § 5-422, Official Comment (1982) (stating the source of that section is U.P.C. § 5-423 (1969) adopted without substantive change).  The Editorial Board Comments for the uniform provision state:

> "The purpose of this section is to facilitate commercial transactions by negating the traditional duty of inquiry found under the common law of trusts.  Even the third party's actual knowledge that the third party is dealing with a conservator does not require that the third party inquire into the possession of or propriety of the conservator's exercise of a power.  Nor is the third party, contrary to the common law, responsible for the proper application of funds or property delivered to the conservator.  But consistent with the emphasis on limited conservatorship, the protection extended to third parties is not

unlimited. Third parties are charged with knowledge of restrictions on the authority of limited conservators."

Unif. Probate Code § 5-424, Official Comment (2010). The Uniform Probate Code Practice Manual further explains:

> "The fact that a person knowingly deals with a conservator does not alone require the person to inquire into the existence of power or the propriety of its exercise except that restrictions on the conservator's powers imposed by the court and endorsed on his letters of conservatorship are effective against third persons. The protection accorded to purchasers and others who deal with a conservator or assist him in a transaction extends to instances in which some procedural irregularity or jurisdictional defect occurred in proceedings leading to the issuance of letters of conservatorship. In other words, a person dealing with a de facto conservator is protected as much as one dealing with a de jure conservator."

2 Richard V. Wellman, *Uniform Probate Code Practice Manual* 546 (2d ed. 1977).

[¶26] The district court found the 2009 lease between Willis Swenson and Mahlum required Mahlum to pay Junietta Swenson $10,008 on March 15 and October 15, with the balance of $11,006.50 paid to Willis Swenson in March. The court incorrectly interpreted the lease. Under the plain language of the lease, each year Mahlum was required to pay Willis Swenson $31,022.50 by March 1, unless Junietta Swenson died. In that case Mahlum was to make semi-annual payments of a portion of the rent to the Swenson farm land trust and a single payment of the remaining rental to Willis Swenson. The lease did not require any payment to Junietta Swenson.

[¶27] Mahlum testified he made payments under the lease directly to Willis Swenson in years prior to those at issue in the lawsuit, and other documentary evidence was presented supporting his testimony. Junietta Swenson died in November 2013, after the 2013 rental payment was due. Under the lease, Mahlum was required to pay the entire amount of the annual rent to Willis Swenson on March 1, 2013. The district court erred in interpreting the lease otherwise.

[¶28] The evidence established the 2009 lease between Willis Swenson and Mahlum was valid and enforceable, and remained in effect in 2013. Mahlum agreed he farmed the property in 2013 but did not pay rent to Willis Swenson. The evidence established

10

Mahlum breached the lease by failing to pay Willis Swenson rent in 2013. We conclude the court's findings are clearly erroneous and reverse the district court's dismissal of Willis Swenson's breach of contract claim for 2013.

IV

[¶29] Willis Swenson argues he should be awarded at least $31,022.50 in damages for Mahlum's breach of contract. He contends a damage award of $31,022.50 would put him in the same position he would have been in if the lease had been performed according to its terms.

[¶30] The district court ruled any damages Willis Swenson was entitled to if his claims were successful were limited. The court explained:

> "Willis Swenson seeks $31,022.50 for the years of 2013, and through the term of the lease. . . . [A]ccording to the lease between Junietta Swenson and Willis Swenson, of the above stated amount, $20,016 was first to be paid to Junietta Swenson. The most Willis Swenson would ever receive under the lease would be $11,006.50 per year.
>
> "Section 32-03-36, NDCC, provides that no person can recover a greater amount in damages for breach of an obligation than that person would have gained by full performance. Full performance would have netted Willis Swenson $11,006.50 per year. His damages, if any, must be limited accordingly."

[¶31] Section 32-03-09, N.D.C.C., governs damage awards for breach of contract, and states:

> "For the breach of an obligation arising from contract, the measure of damages, except when otherwise expressly provided by the laws of this state, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby or which in the ordinary course of things would be likely to result therefrom."

"The general rule in the case of a breach of contract is that the measure of damages is the amount which will compensate the injured person for the loss which a fulfillment of the contract would have prevented or the breach of the contract now requires." *Bakke*, 2018 ND 273, ¶ 23, 920 N.W.2d 726. "The person injured is, as far as it is possible to do so by monetary award, to be placed in the position he would

have been in had the contract been performed." *Id.* (quoting *Vallejo v. Jamestown Coll.*, 244 N.W.2d 753, 758 (N.D. 1976)).

[¶32]  The contract required Mahlum to pay Willis Swenson $31,022.50 in 2013. Although Willis Swenson had a separate lease with Junietta Swenson for the property that required him to pay her $20,016, Willis Swenson's lease with Mahlum did not require any of the rental payment to be paid directly to Junietta Swenson.  The only issues in this case were whether Mahlum breached his lease with Willis Swenson, and whether the third-party defendants were unjustly enriched.  Any amounts Willis Swenson may owe Junietta Swenson or her estate for the 2013 rent are unrelated to the issues in this case.  There were no claims in this case related to the Willis Swenson and Junietta Swenson lease.  The district court's finding that Willis Swenson's damages for his 2013 breach of contract claim were limited to $11,006.50 because "$20,016 was first to be paid to Junietta Swenson" was clearly erroneous.

[¶33]  Mahlum argued Willis Swenson failed to mitigate his damages in 2013. Whether a party made a good faith effort to mitigate damages is a question of fact. *See Ruud v. Larson*, 392 N.W.2d 62, 63 (N.D.1986).  The district court did not directly address this argument.  On remand, the court must decide the amount of damages Willis Swenson is entitled to recover for his breach of contract claim against Mahlum for unpaid rent in 2013, including whether Willis Swenson failed to mitigate those damages.

V

[¶34]  Mahlum argues the district court erred in dismissing his claim against the third-party defendants.  The district court did not decide Mahlum's claim.  Mahlum's claim was dependent on the court entering judgment against him on Willis Swenson's claim. Because we are reversing the court's order and judgment on Willis Swenson's 2013 breach of contract claim, we also reverse the court's order and judgment dismissing Mahlum's claim against the third-party defendants.  On remand, the court must decide Mahlum's claim against the third-party defendants.

## VI

[¶35]  The remaining issues are without merit or unnecessary to our decision.  We reverse the district court's order and judgment dismissing Willis Swenson and Mahlum's claims, and remand for further proceedings consistent with this decision.

[¶36]  Daniel J. Crothers, Acting C.J.
Lisa Fair McEvers
Jon J. Jensen
Jerod E. Tufte
Benny Graff, S.J.

[¶37]  The Honorable Benny Graff, S.J., sitting in place of VandeWalle, C.J., disqualified.