# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2020 ND 305

Three Aces Properties LLC, successor in
interest to Dresser Oil Tool, Inc.,

Plaintiff, Appellant,

and Cross-Appellee

v.

United Rentals (North America), Inc.,
successor in interest to RSC Equipment
Rental, Inc.,

Defendant, Appellee,

and Cross-Appellant

## No. 20200032

Appeal from the District Court of Williams County, Northwest Judicial District, the Honorable Paul W. Jacobson, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice.

Lisa M. Six (argued) and Garth H. Sjue (appeared), Williston, ND, for plaintiff, appellant and cross-appellee.

Jeffrey M. Markowitz (argued), Corey S. Bronczyk (appeared), Stephen M. Warner and Jonathon M. Zenter (on brief), Minneapolis, MN, for defendant, appellee and cross-appellant.

**Crothers, Justice.**

[¶1]   Three Aces Properties LLC appeals and United Rentals (North America), Inc., cross-appeals from a judgment and orders denying their motions to amend the judgment. Three Aces argues the district court erred by failing to award it damages for its breach of contract claims. United Rentals argues the court erred in dismissing its breach of contract and constructive eviction claim. We affirm.

I

[¶2]   On March 3, 2010, Dresser Oil Tools, Inc. and RSC Equipment Rental, Inc. entered into a lease for commercial real property in Williston, North Dakota. Three Aces is Dresser Oil Tools' successor in interest, and United Rentals is RSC Equipment Rental's successor in interest. In 2013, United Rentals exercised an option to extend the lease until March 31, 2014. In September 2013, United Rentals vacated the property. In November 2013, Three Aces executed an agreement to lease the property to Kum & Go.

[¶3]   In 2017, Three Aces sued United Rentals for breach of contract and waste. Three Aces claimed United Rentals breached the lease by failing to pay rent after it vacated the property, failing to maintain and repair the parking area, and failing to maintain and repair the premises. Three Aces alleged United Rentals' use of the premises resulted in destruction of the asphalt parking area and damages to the building and other areas of the property. Three Aces claimed United Rentals attempted to repair the parking area by replacing the asphalt paving with scoria, the City of Williston notified the parties that replacement of the asphalt with scoria violated zoning ordinances, and the parties disagreed about which party had an obligation to repair the parking area.

[¶4]   United Rentals answered and counterclaimed for breach of contract. United Rentals alleged Three Aces had an obligation under the lease to ensure

United Rentals could legally occupy the property, Three Aces refused to repair the parking area as the City directed, and United Rentals was forced to vacate the premises as a result of Three Aces' refusal to comply with the City's directive to repair the parking area.

[¶5]   Both parties moved for summary judgment. United Rentals argued there were no genuine issues of material fact, it was entitled to judgment as a matter of law on all of Three Aces' claims, and there was no evidence of any damages to Three Aces for its breach of contract claims. United Rentals also argued it lawfully terminated the lease and vacated the property when it learned it could not legally occupy the property, and it was entitled to summary judgment on its breach of contract claim because Three Aces constructively evicted it from the property by failing to repair the parking area to comply with the City's demands. Three Aces argued United Rentals was obligated to maintain the parking area under the lease, United Rentals breached the lease by destroying the asphalt on the parking area and failing to repair the area, and United Rentals breached the lease by damaging and failing to repair the premises before surrendering it. Three Aces also asserted United Rentals failed to pay monthly rent of $6,898 for the last six months of the term of the lease, and United Rentals' claim failed as a matter of law because Three Aces did not breach any contractual duty.

[¶6]   The district court concluded there were no genuine issues of material fact and decided all claims on summary judgment. The court determined United Rentals breached the lease by failing to pay rent for the final six months. The court also concluded United Rentals breached the lease by failing to leave the parking area in the same or similar condition as when the lease began. The court denied United Rentals' motion for summary judgment as to its breach of contract and constructive eviction claim, but granted summary judgment on its damages argument. The court determined Three Aces was not entitled to damages related to the parking area because there was no diminution of value in the property as a result of the breach and any damages were mitigated by redevelopment of the property. The court concluded Three Aces was only entitled to damages for its breach of contract claim related to the unpaid rent. Judgment was entered in favor of Three Aces for $56,097.18.

2

[¶7]   Both parties moved to amend the judgment under N.D.R.Civ.P. 52(b) and 59(j). The district court denied both motions.

## II

[¶8]   The standard for reviewing a district court's decision on a motion for summary judgment is well established:

> "Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record."

*Feltman v. Gaustad*, 2020 ND 89, ¶ 7, 942 N.W.2d 844 (quoting *Pennington v. Cont'l Res., Inc.*, 2019 ND 228, ¶ 6, 932 N.W.2d 897).

## III

[¶9]   Three Aces argues the district court erred by granting summary judgment and failing to allow a trial on damages related to United Rentals' failure to repair the premises. Three Aces contends the court erred in determining as a matter of law that the appropriate measure of damages was the diminution in value of the property and that any damages Three Aces incurred were mitigated by redevelopment of the property.

3

[¶10] The elements for a breach of contract claim are: (1) the existence of a contract; (2) breach of the contract; and (3) damages which flow from the breach. *Swenson v. Mahlum*, 2019 ND 144, ¶ 19, 927 N.W.2d 850. The party asserting a breach of contract must prove all of the elements. *Id.* The nonperformance of a contractual duty when it is due is a breach of the contract. *Id.* The interpretation of a contract to determine its legal effect is a question of law, which is fully reviewable. *Id.* at ¶ 20. General rules of contract interpretation apply to leases. *Id.* The determination of the amount of damages caused by a breach of contract is a finding of fact. *Peterbilt of Fargo, Inc. v. Red River Trucking, LLC*, 2015 ND 140, ¶ 16, 864 N.W.2d 276.

[¶11] The lease included a maintenance and repair provision, stating:

> "Licensee shall maintain and repair the Premises, including without limitation, maintaining and repairing (i) all interior walls, storefronts, floors, ceilings, interior and exterior doors, interior and exterior windows, and fixtures as well as damage caused by Licensee, its agents, employees or invitees, and (ii) the exposed electrical, plumbing, and sewage system. In addition, Licensee shall maintain the heating, ventilating, and air conditioning system and other related equipment which is affixed to the Premises, including the cost of routine service calls on such equipment. Licensee shall maintain the parking area and fence, such parking area and fence shall be surrendered in a condition similar to that existing at the time Licensee took occupancy, subject to wear and tear caused by the ordinary operation of Licensee's business on the Premises. Regular, periodic maintenance of the lawns, landscaping and shrubbery shall be the responsibility of Licensee."

[¶12] The district court determined the undisputed facts established United Rentals had a duty to maintain the parking area and to surrender the parking area in a condition similar to that which existed when the lease began. The court concluded Three Aces was not obligated to pave the parking area with a hard surface after the commencement of the lease, United Rentals attempted to maintain the parking area by covering it with scoria which was not "similar" to an asphalt paved parking area, and United Rentals failed to leave the parking area in a condition similar to the condition that existed when the lease

4

began. The court concluded United Rentals breached the lease by failing to repair the parking area.

[¶13] Although the district court concluded United Rentals breached the lease by failing to repair the parking area, it also concluded Three Aces was not entitled to recover damages for the breach. The court stated Three Aces had a duty to minimize its damages and either the cost to repair or the diminution of value of the property would be an appropriate measure of damages. The court determined the undisputed evidence established Three Aces did not lease the property during the remaining term after United Rentals vacated the property, but Three Aces entered into negotiations with Kum & Go to redevelop the property as a convenience store, and it leased the property to Kum & Go in an agreement dated November 12, 2013. The court concluded Three Aces began plans to redevelop the property into a Kum & Go station while United Rentals still occupied the property, the plan made any repairs unnecessary, and eliminated any damages. The court also concluded undisputed evidence established the value of the property prior to the lease with United Rentals was $750,000 and the value of the property a few months after United Rentals left was $1.7 million. The court found the original lease with Kum & Go requires Kum & Go to pay rent plus the cost of redeveloping the property, including razing the parking area and structure, and the amended lease requires Kum & Go to pay up to $3.1 million to Three Aces in redevelopment and construction costs. The court concluded the value of the property increased since the parties entered into the lease, Kum & Go was going to pay rent plus the cost of redeveloping the property, and therefore the property value did not decline and any damages were mitigated with the lease to Kum & Go.

[¶14] Section 32-03-09, N.D.C.C., generally describes the measure of damages for a breach of contract, and states:

> "For the breach of an obligation arising from contract, the measure of damages . . . is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby or which in the ordinary course of things would be likely to result therefrom. No damages can be recovered for a breach of contract if they are not clearly ascertainable in both their nature and origin."

5

The injured party has a duty to mitigate or minimize its damages and "must protect himself if he can do so with reasonable exertion or at trifling expense, and can recover from the delinquent party only such damages as he could not, with reasonable effort, have avoided." *Peterbilt*, 2015 ND 140, ¶ 18 (quoting *Coughlin Constr. Co., Inc. v. Nu-Tec Indus., Inc.*, 2008 ND 163, ¶ 12, 755 N.W.2d 867); *see also Tweeten v. Miller*, 477 N.W.2d 822, 825 (N.D. 1991) (stating the nonbreaching party has a duty to minimize the damages if there is a breach of a lease agreement). The injured party is limited to the loss actually suffered by the breach and cannot be put in a better position by a recovery of damages than he would have been if there had been performance. *Vallejo v. Jamestown Coll.*, 244 N.W.2d 753, 759 (N.D. 1976). "The general rule in the case of a breach of contract is that the measure of damages is the amount which will compensate the injured person for the loss which a fulfillment of the contract would have prevented or the breach of the contract now requires." *Swenson,* 2019 ND 144, ¶ 31 (quoting *Bakke v. Magi-Touch Carpet One Floor & Home, Inc.*, 2018 ND 273, ¶ 23, 920 N.W.2d 726).

[¶15] This Court has not addressed the appropriate measure of damages for a breach of contract claim related to the failure to repair under a lease. In construction contract cases we have said two possible measures of damages exist under N.D.C.C. § 32-03-09; either the cost of making the work conform to the contract or the diminution in value of the property as a result of the breach. *See Swain v. Harvest States Coops.*, 469 N.W.2d 571, 573 (N.D. 1991). We explained:

> "There are, of course, two possible measures of damages. If the contract is substantially performed, and the breach of contract can be remedied without taking down and reconstructing a substantial portion of the building, the amount of damages is the cost of making the work conform to the contract. Or, where the defects cannot be remedied without reconstruction of a substantial portion of the work, the measure of damage is the difference in value between what it would have been if built according to contract and what was actually built."

6

*Id.* at 573 (quoting *Dobler v. Malloy*, 214 N.W.2d 510, 518 (N.D. 1973)). This Court also said the cost of the repair generally will be the measure of damages if the defect is remediable from a practical standpoint, but if it is not remediable then the diminution in value is the proper measure. *Biteler's Tower Serv., Inc. v. Guderian*, 466 N.W.2d 141, 146 (N.D. 1991). "The purpose of the difference of value alternative is to avoid unreasonable economic waste when the destruction of usable property and subsequent reconstruction of property is necessary for completion in accordance with the construction contract." *Id.*

[¶16] Other courts have applied the same measure of damages in breach of lease cases related to the tenant's duty to repair. *See* William H. Danne, Jr., *Measure and Elements of Damages for Lessee's Breach of Covenant as to Repairs*, 45 A.L.R.5th 251, § 7[a] (1997) (stating as a general rule the cost of repair is the proper measure of damages only if it is less than the diminution in market value as a result of the injury); Cecily Fuhr, *Cause of Action Against Lessee for Damaging or Failing to Maintain Leased Property*, 87 Causes of Action 2d 101, §§ 27-28 (2020) (stating the cost of repairing damage generally is the preferred measure of damages, but it may be disfavored in cases where the lessor would receive a windfall or when the diminution of value would result in a smaller recovery). *See also*, *Bowes v. Saks & Co.*, 397 F.2d 113, 116-17 (7th Cir. 1968) (stating the cost of repairs is merely a convenient way to quantify the damages a lessor suffered, the diminution in fair market value is the proper measure where the cost of repair exceeds the diminution of market value caused by the lessee's nonperformance, and recognizing the rule is analogous to the doctrine governing breach of construction contracts); *Laska v. Steinpreis*, 231 N.W.2d 196, 200 (Wis. 1975) (stating the diminution of value is an alternative to cost of repair as a method to measure damages caused by a tenant to the landlord's property).

[¶17] In *McLane v. Wal-Mart Stores, Inc.*, 10 S.W.3d 602, 604 (Mo. Ct. App. 2000), the court explained a lessor's recovery for the breach of covenant to repair when a lease term has expired usually is the cost of making the repairs to restore the property to the required condition, but the landlord is not to be put in a better position than if the tenant performed the lease. The court explained:

7

"Cost of restoration is but one method of making landlord whole. There are situations where this method places landlord in a better position than if tenant had performed, thus providing him with a windfall. When this is likely, the measure of damages used is one designed to ensure that the landlord will neither lose nor benefit from tenant's breach. If the cost of restoration exceeds the diminution of market value of the property, recovery will be limited to diminution of value."

*Id.* at 604-05 (quoting 2 Milton R. Friedman, *Friedman on Leases* § 18.1, 1209 (4th ed. 1997)). The court explained diminution in value can be a proper measure of damages where the damage is extensive and permanent and the cost of repairs would greatly exceed the before and after value of the real estate, but the cost of repairs may be appropriate where the damage is temporary and readily capable of repair. *McLane*, at 606. The court stated, "[T]he only reason for a choice between the two measures is to prevent windfalls and economic waste, and if there is no evidence of either, then a recovery should be permitted under either measure for which there is evidence." *Id.* (quoting 1 Dan B. Dobbs, *Law of Remedies* § 5.2(2), at 721 (1993)).

[¶18] We agree that the lesser of the cost to repair or the diminution in value is the proper measure of damages for a breach of a duty to repair in a lease. The rule for damages in construction contract cases is based on avoiding windfalls and economic waste, and the same rationale applies to damages for a breach of the duty to repair related to a lease. The cost to repair generally will be the correct measure, but it is only a place to start in determining the correct amount of damages. The non-breaching party should not be awarded an amount that will put them in a better position than they would have been in if the breach never occurred. We conclude either the cost of repair or the diminution of value may be an appropriate measure of damages in this case.

[¶19] Here, undisputed evidence established the cost of repairs and the diminution of value. An appraisal report for the property from Three Aces' expert witness, Wade Becker, was filed as an exhibit. The report explained that the purpose of the appraisal was to determine the diminution of market value resulting from the damage United Rentals caused. Becker determined the

property, including the site and improvements, was worth $2 million in its "as-is" condition on the day United Rentals vacated the property in September 2013. Becker also determined the property would be worth the same if it had been in the same condition as it was when the lease began in 2010. The report concluded that the property in its current use was at the end of its economic life in terms of market appeal, that the current improvements to the property no longer contributed to the value of the property, and that due to the limited supply and high demand for well positioned sites in the area of the property, the market conditions warrant replacement of the property's present use with a more productive or economic use of the site. Other evidence established that after United Rentals vacated the property Three Aces redeveloped and leased the property to Kum & Go based on the land valuation of $1.7 million. Three Aces does not argue there is a genuine issue of material fact about the value of the property and whether the property value would be higher if the repairs had been made. The undisputed evidence established the property was worth the same regardless of whether the repairs were made, and therefore there would be no damages under the diminution of value measure.

[¶20] Evidence also was presented about the estimated cost to repair the property to return it to the condition when the lease began. Evidence established the repairs would cost approximately $2.7 million. The undisputed evidence established the cost of repairing the property was significantly higher than the diminution in value. Thus repairing the property was economically impractical. Awarding damages based on the cost to repair would result in Three Aces receiving a windfall. Diminution of value was the correct measure of damages in this case.

[¶21] We conclude the district court did not err in failing to award Three Aces damages for its breach of contract claim related to United Rentals' failure to repair the parking area.

IV

[¶22] Three Aces argues the district court erred by failing to conclude United Rentals breached the lease by not maintaining and repairing the premises.

9

[¶23] Although the district court did not explain whether United Rentals breached the lease by failing to maintain and repair the premises other than the parking area, the court concluded, "United Rentals was plainly required under the Agreement, as a matter of law, to maintain and repair the Premises (inside and out) during its occupation of the Premises, without limitation." The judgment ordered, "there being no other damages awardable to the parties' as a matter of law on any claim and/or counterclaim, all other claims asserted by the parties in this action are dismissed with prejudice." All claims were decided.

[¶24] Even if the district court concluded there was undisputed evidence United Rentals breached the contract by failing to repair the premises, the outcome of the case would be the same. The court determined any damages for the failure to repair were mitigated and Three Aces was not entitled to recover under the diminution of value measure of damages. We have already held the court properly determined Three Aces was not entitled to damages related to its breach of contract claims, other than the unpaid rent. We conclude the district court did not err by failing to determine whether United Rentals breached the contract by not maintaining and repairing the premises.

V

[¶25] United Rentals argues the district court erred by dismissing its breach of contract claim. United Rentals contends Three Aces breached the lease by failing to repair the parking area and by failing to ensure United Rentals could continue to legally occupy the property. United Rentals claims the lease required Three Aces to ensure United Rentals could legally occupy the premises; the City required the parking area to be repaired and threatened prosecution, jail time, and fines for the failure to make the repairs; Three Aces never made the required repairs; and therefore United Rentals could no longer legally occupy the premises, the lease terminated, and it was constructively evicted. United Rentals also asserts summary judgment in favor of Three Aces on its breach of contract claim for failure to pay rent should be reversed because United Rentals' duty to pay rent terminated upon Three Aces' breach.

10

[¶26] The lease included a provision entitled "CONDITION PRECEDENT" which stated:

> "This License Agreement is subject to Licensee being able to legally occupy the Premises from both zoning and use requirements and for any required governmental special use, variance or occupancy permits. Licensee shall not be required to expend in excess of $1,000 to obtain said permits, otherwise, Licensee shall have the option of terminating this License Agreement and if elected, there will be no further obligations between the parties if Licensee cannot obtain said approvals. Licensor is applying for a Special use Permit application to allow Licensee's use of the Premises."

The lease further stated, "In the event Licensee's use and occupancy is not allowed by any governmental agency, this License Agreement shall terminate." The lease also stated United Rentals "shall maintain the parking area and fence, such parking area and fence shall be surrendered in a condition similar to that existing at the time Licensee took occupancy, subject to wear and tear caused by the ordinary operation of Licensee's business on the Premises."

[¶27] The district court dismissed United Rentals' breach of contract claim. The court concluded Three Aces was not obligated under the lease to pave the parking area with a hard surface after the commencement of the lease and United Rentals was required to maintain and repair the parking area under the lease. The court concluded undisputed evidence established United Rentals or its predecessor attempted to repair the parking area with scoria, the scoria and dirt parking area was not "similar" to an asphalt parking area, and United Rentals failed to leave the parking area in a condition similar to when it began the lease. The court held United Rentals' breach of contract claim failed as a matter of law and it was not constructively evicted. The court explained:

> "The City of Williston's threats did not deprive United Rentals of benefits under the Agreement. But, to the extent any such deprivation occurred, Three Aces did not cause that deprivation. Any deprivation here came to be only because of United Rentals' or its predecessor's destruction of the asphalt pavement and botched repair of the same, meaning that United Rentals was not constructively evicted."

11

[¶28] For commercial leases, no statute or case requires a lessor to keep the premises in a fit and habitable condition. *See B.W.S. Invs. v. Mid-Am Restaurants, Inc.*, 459 N.W.2d 759, 763 (N.D. 1990) (adopting majority view that implied warranties of fitness and habitability do not extend to commercial leases). *Cf.* N.D.C.C. § 47-16-13.1(1)(b) (stating a landlord of a residential dwelling shall make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition). However, the lease in this case was expressly subject to United Rentals being able to legally occupy the premises under zoning and use requirements, and stated the lease would terminate if United Rentals' use and occupancy was not allowed by a governmental agency. United Rentals does not dispute that it could legally occupy the premises when it first moved onto the property.

[¶29] Undisputed evidence established United Rentals' predecessor sent Three Aces' predecessor a letter dated April 11, 2011, advising that the parking area asphalt failed. In January 2013, United Rentals notified Three Aces it was exercising its option to renew the lease with the same terms and conditions. The City notified Three Aces by letter in June 2012 that the parking area was in poor condition, that scoria was not approved for hard surfaces under a city ordinance regarding hard surfaces, and that the parking area needed to be covered with an approved hard surface. The City sent Three Aces a second letter in February 2013 stating the parking area was "being maintained in violation" of city ordinances and an improved asphalt or concrete parking area must be completed by August 31, 2013 or the file would be turned over to the City Attorney's office for action. In July 2013, the City sent a third letter to both Three Aces and United Rentals stating the letter was the final notice that the parking area was in violation of the city ordinance, the crushed scoria was not a suitable hard surface pavement, and the property must comply with the ordinance by August 31, 2013 or the City would take action, which could lead to fines of up to $500 per day and up to 30 days in jail. Undisputed evidence established the parking area was not repaired to comply with the City's demands and United Rentals vacated the property in September 2013 before the end of the lease.

[¶30] The lease required United Rentals to "maintain" the parking area. The word "maintain" in its ordinary sense is defined as "to keep in a state of repair," and we held the party who had the responsibility to maintain a road had the responsibility to keep the road in a state of repair, including making necessary repairs. *Sykeston Township v. Wells County*, 356 N.W.2d 136, 143 (N.D. 1984). Maintain also is generally defined as, "To care for (property) for purposes of operational productivity or appearance; to engage in general repair and upkeep." *Black's Law Dictionary*, 1142 (11th ed. 2019); *see also Merriam-Webster's Collegiate Dictionary* 749 (11th ed. 2020) (defining "maintain" as "to keep in an existing state (as of repair, efficiency, or validity) : preserve from failure or decline").

[¶31] In construing contracts, "if a conflict exists between a specific provision and a general provision in a contract, the specific provision qualifies the general provision." *Kittleson v. Grynberg Petroleum Co.*, 2016 ND 44, ¶ 14, 876 N.W.2d 443 (quoting *Kortum v. Johnson*, 2008 ND 154, ¶ 44, 755 N.W.2d 432). The specific provision generally prevails over the general. *Kittleson*, at ¶ 14. To the extent the parking area maintenance provision of the lease conflicts with the provision regarding United Rentals being able to legally occupy the premises under zoning and use requirements, the parking area maintenance provision is more specific and therefore prevails.

[¶32] Under the terms of the lease, United Rentals had the duty to keep the parking area in the existing state of repair and to surrender it in a condition similar to that existing at the beginning of the lease. The undisputed evidence established United Rentals failed to keep the parking area in repair and attempted to repair the parking area using a material that was not authorized by city ordinances. United Rentals' failure to perform its duty under the lease caused the City to determine the parking area violated city ordinances and threatened legal action. Three Aces did not have a duty to repair the parking area after the lease began. United Rentals was not constructively evicted. We conclude the district court did not err in dismissing United Rentals' breach of contract claim.

# VI

[¶33] We have considered the parties' remaining issues and arguments and we conclude they are either unnecessary to our decision or are without merit. We affirm the judgment and orders.

[¶34]  Jon J. Jensen, C.J.
      Gerald W. VandeWalle
      Daniel J. Crothers
      Lisa Fair McEvers
      Jerod E. Tufte